nel of the stream so as to convey the water in as large quantities as necessary without injuring plaintiff's land. The court granted a perpetual injunction, and a judgment for past damages found by the jury. From this the defendant appeals.

Argued before LEARNED, P. J., and LANDON and INGALLS, JJ.

*Thornton A. Niven,* for appellant. *Timothy F. Bush,* for respondent.

LEARNED, P. J. We do not think that the provision in the charter, c. 238, (Laws 1823, § 10,) which gives the right to a summary application for a jury to assess damages, takes away plaintiff's common-law right of action, or his right to an action in equity. *Selden* v. *Canal Co.,* 24 Barb. 362; *Crittenden* v. *Wilson,* 5 Cow. 165. The important question here is whether defendant is liable for the injury caused, without proof of some negligence on its part. It is not claimed that there was defect in the construction of the dam or in its maintenance; and the defendant only discharges the water at times, and in amounts necessary for the use of its canal. The case of *Bellinger* v. *Railway Co.,* 23 N. Y. 42, held that where, in pursuance of legislative authority, a person interferes with a running stream by obstructing its flow, he will not be liable for overflows caused, unless on proof of want of due skill. Probably this case states the doctrine claimed by the defendant. Similar is the case of *Cuddeback* v. *Canal Co.,* 20 Wkly. Dig. 454, where damage was claimed to arise by percolation from defendant's canal. If this action were for damages occasioned by a break of the dam, the decision in *Losee* v. *Buchanan,* 51 N. Y. 476, at 487, would probably apply. But there is a difference in the present case. The plaintiff's damages do not arise incidentally from the construction of defendant's dam. They arise from the intentional act of defendant in discharging through an insufficient channel a large body of water, without providing sufficient outlet below plaintiff's land. The defendant, having a supply of water obtained by its dam, desires to send that water down into its canal. It does this without regard to the fact (of which it has been notified) that the channel of the stream will not carry so large an amount; and therefore the defendant is really pouring this water upon plaintiff's land, with knowledge that it is so doing. While, of course, the defendant has, we suppose, no wish to injure plaintiff, yet it does acts which it knows will directly injure him; and this it should not be allowed to do. The right to dam a stream, given by a legislature, may excuse the person who constructs the dam in a proper manner from liability arising from great freshets, or from ordinary percolation of water. But we think that such right does not authorize the person intentionally to pour the water thus accumulated upon the land of other persons. Nor may he do this by pouring it through the original channel of the stream in such large quantities that the channel cannot convey it. We are of the opinion that the decision of the learned justice was correct, and that the judgment should be affirmed, with costs. All concur.

---

*In re* DORR.

(*Supreme Court, General Term, Third Department.* March 16, 1889.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—ACCOUNTING BY ASSIGNEE.
Where an assignee for the benefit of creditors defends suits pending at the time of the assignment against the assignors, and judgment is rendered against defendants with costs against the estate, on an accounting by the assignee the court can, if it finds the assignee guilty of misconduct in conducting the defense, charge him personally with the costs.

2. SAME.
Such assignee cannot charge the estate for the use of his horse in the business of the estate.

3. SAME—ATTORNEY'S FEES.
   Where counsel fees are incurred by the assignee in litigations concerning the estate for which the assignee is personally liable, the court can in its discretion refuse to allow them to the assignee on his accounting, where the litigation was unnecessary and the assignee negligent.
4. SAME.                              .
   Where the accounts of the assignee were carelessly kept, with false and erroneous entries, he is not entitled to any allowance for attorney's fees in settling the accounts.
5. SAME—OVERPAYMENTS.
   Nor is he entitled to money overpaid to workmen employed in the business of the estate.
6. SAME—DISCOUNTING NOTES.
   Where the assignee unnecessarily discounts notes due the estate for less than their face value, he is properly chargeable with the face value of the notes.

Appeal from St. Lawrence county court; J. M. KELLOGG, Judge.

Accounting of G. H. Dorr, assignee for the benefit of creditors of Felt & Bell. Appeal by Dorr from the decree of the county court.

Argued before LEARNED, P. J., and INGALLS and LANDON, JJ.

W F. Ford, for appellant. H. E. Morse, C. E. Emerson, G. R. Malby, and R. E. Waterman, for sundry creditors, respondents.

LEARNED, P. J. This is an appeal from an accounting before the county judge of George H. Dorr, assignee for the benefit of creditors. Several objections are taken by the assignee, appellant.

1. At the time of the assignment two actions were pending against the assignors. The assignee caused himself to be made a party, and finally judgment went against the defendants, including the assignee, for the amount demanded, with costs. These costs were not by those judgments made payable by the assignee personally. Code, § 3246. The county judge held that, though as between the plaintiffs in those actions and the assigned estate, the costs were payable from the estate, yet that on this accounting the assignee should be charged with the same, to be deducted from the amount allowed for commissions and expenses. The reason for this was that the defense was unnecessary, and that the assignee had been guilty of great negligence therein. The appellant insists that the judgments were conclusive in favor of the assignee; that, as he was not personally charged in the judgments, he cannot be charged in his accounting. He relies on Hone v. De Peyster, 106 N. Y. 648, 13 N. E. Rep. 778. But in that case the defendants, who had recovered a judgment against a plaintiff as executor for costs, made a motion to compel the plaintiff to pay personally. The court held that the judgment was conclusive. The language of the court in that case must be understood as applicable to the facts. The question arose simply between the parties to the judgment. Between them the judgment was conclusive, and, as the judgment had not made the plaintiff personally liable, he could not be made so on defendant's motion. But that principle decided nothing in regard to this assignee's liability to those for whom he is trustee. They were not parties to the judgment against him, and are not bound by its terms. A single consideration will show this. It was the assignee's interest to have the judgment rendered against the estate; and, if the estate was solvent, the plaintiffs would not desire a judgment against him personally,—so that there would be no one to urge that he had been guilty of negligence. But now the persons interested in the estate are heard for the first time. They have a right to charge that the assignee was guilty of misconduct. No error was made by the county judge in this respect.

2. We think the county judge was right in disallowing the assignee's charges for the use of his own horse in the business of the estate. The general rule as to trustees dealing with themselves is familiar. It should be adhered to as a most valuable protection to cestuis que trustent. We see nothing in the authorities cited by the appellant which sustains this charge of the appellant.

3. The assignee claimed for counsel fees incurred amounting to $786.25, on which $155 had been paid. The county judge allowed only $150. To a large extent (about $400) these counsel fees had been incurred in the litigations above referred to. If the assignee had acted so improperly that he should not be allowed the costs recovered against the estate, but should be required to pay them, then it would follow that the same rule should be applied to this part of the counsel fees. He may be personally liable for them, but they should not be allowed him in his accounting. Of course, the assignee is entitled to his reasonable expenses. Among them may be reasonable counsel fees. But they must be reasonable. This does not mean that the counsel given must necessarily be such as is proved to be correct by the result of an action. No one is infallible. Advice may turn out to have been injudicious. On the other hand, the assignee must not unreasonably enter into litigation and employ counsel therein at the expense of the estate. On this question the county judge exercised his discretion. We think that there is not shown any such abuse of discretion as to require us to reverse his decision. So in regard to the allowance to counsel on the accounting. The county judge, after speaking of the careless manner in which accounts had been kept, with sometimes false and erroneous entries, would not allow the assignee, for these reasons, anything for counsel; saying he must bear this expense personally. An examination of the accounts leads us to agree with the county judge.

4. For a similar reason the county judge would not allow certain overtime of workmen, on the ground that it was more than was due them, and more than was paid. If it was more than was due, then the assignee should be charged with it. We are not shown that the county judge was in error in this finding of fact that it was more than was due. We have examined the testimony on this point. Unless it plainly appears that there was a mistake by the county judge, his finding must stand.

5. There are several small amounts which the county judge charged against the assignee. It appears that the assignee continued the business in which the assignors had been engaged. He manufactured articles and made sales. In many instances notes were taken, and were then sold by the assignee at less than their face; and he charged himself only with the amount received. The county judge has surcharged him with the difference between the note and the cash for which it was sold. In these instances the county judge states that the discount was not justified. If an assignee carries on business, there may be a necessity for discounting notes for cash. The county judge justifies the assignee, under the circumstances, in proceeding with the manufacture, and no question on that point is made before us. Whether in each instance it was necessary and proper to discount the notes for less than their face would seem to be a matter of sound judgment, under the circumstances; and we understand the county judge to find that the circumstances did not justify these discounts. We have examined the evidence in regard to these surcharges, but we think it not necessary to state it. It presents another question of fact, or rather several questions of fact, viz., whether the assignee was justified in thus disposing of these several notes. We cannot say the findings were incorrect. Similar to this is a surcharge for services of the foreman, Bell, for 18 days, when, as the county judge finds, there was no work done by him. This is a question of fact, viz., whether he was really needed at that time. The county judge held not.

The appellant objects to a surcharge of $33 for commissions paid Eldridge on the Lewis order. But Eldridge testifies that the order was countermanded, and was afterwards filled by the Cutler Marble Company. It does not appear, so far as we can see, that this company paid this amount to the assignee for commissions. They paid some amount, it is true. Again, the appellant objects to a surcharge of $13 on the Griswold order. This sum was received by the assignee. But it is said that he did not keep it. The proof of this we are not

referred to. It appears to us on an examination of this whole case that the assignee has nothing of which to complain in the decision of the county judge, and that he was fortunate in not having been held to a more strict accountability. The order is affirmed, with costs. All concur.

---

PEOPLE *ex rel.* HEALEY *v.* FORBES *et al.*, Excise Commissioners.

(*Supreme Court, General Term, Third Department.* March 16, 1889.)

1. INTOXICATING LIQUORS—REVOCATION OF LICENSE—APPEAL.
    A resolution of a board of excise commissioners, revoking relator's license, though not delivered to her, was such an act that she has the right to review it.

2. GAMING—KEEPING GAMBLING TABLE.
    Keeping a billiard table, even though the loser pays for the use of the table, is not keeping a gambling table, within the meaning of the statute.

*Certiorari* to review the proceedings of the board of excise of Canton, St. Lawrence county.

Argued before LEARNED, P. J., and INGALLS and LANDON, JJ.

*H. D. Ellsworth* and *H. E. Seaver,* for relator. *Almoron Z. Squires,* for Commissioners Forbes and Barber.

LEARNED, P. J. We think that the resolution revoking the relator's license, although it was not delivered to her, was such an act of the board that she has the right to review it. By the vote of the board, on motion of Mr. Forbes, it appears that the license was revoked because she suffered gambling in the house, "as we understand the law." The question, then, is fairly presented whether on the evidence she did suffer gambling in the house. The evidence, in brief, is that she kept a billiard table in the house, on which persons played upon the terms that the loser should pay for the use of the table. The game of billiards is one of skill, not of chance. It is a game for physical, though not violent, exercise. It is similar in its character to the game, lately so popular, of croquet; and not unlike in character to curling, or base ball. In *People* v. *Sergeant,* 8 Cow. 139, it was decided that keeping a billiard table, where the loser paid for the table, was not gaming, within the law which makes the house a nuisance. In *Hitchins* v. *People,* 39 N. Y. 454, it does not appear what games were played. In an unreported case,—*People* v. *Commissioner of Excise,* (decided in November, 1887,)—it was held by Mr. Justice POTTER that such playing at billiards (the loser paying) was not a violation of the bond given by an hotel-keeper. In *Tanner* v. *Trustees,* 5 Hill, 121, however, it was held that a bowling alley kept for hire was a nuisance at common law. The learned justice who wrote the opinion cited many ancient cases, and spoke of the immorality of Charles the Second, but said that he himself had never seen a game of billiards. Nothing, therefore, was decided as to this game. It further appears that under the old law, and for many years, the bond of an hotel-keeper was conditioned that he should not keep a billiard table, or other gaming table. Under the present law the words "billiard table" are omitted, and the condition is that the licensee will not keep a gambling table. The respondents urge that the omission is because it had been settled that a billiard table was a gambling table, and need not be specified. It may quite as well be said that the omission was intended to indicate that a billiard table was not a gambling table. Laws 1857, c. 628, § 7. The case of *People* v. *Cutler,* 28 Hun, 465, was a conviction of defendant as a disorderly person, and the court held the evidence sufficient, under Code Crim. Proc. § 899, subds. 4, 7. We do not think that that decision is conclusive on the present question. The truth is that the evils and the attraction of gambling arise where there is a large element of chance; and in construing this statute we may properly consider the evil aimed at. Our opinion is that the doctrine of *People* v. *Sergeant,* and of *People* v. *Commissioner of Excise,* above cited, is correct,